IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CYNTHIA LITTLE, | : | |
| | : | |
| Plaintiff, | : | No.: 1:11-CV-01804 |
| | : | |
| v. | : | |
| | : | |
| THE CHAMBERSBURG | : | |
| HOSPITAL, | : | Hon. John E. Jones III |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

March 28, 2012

**I.   INTRODUCTION**

Before the court in this employment discrimination matter is the Motion to Dismiss of the Defendant, The Chambersburg Hospital. (Doc. 13). The Motion has been fully briefed and is thus ripe for review. For all of the reasons detailed herein, we will grant the Defendant's Motion in its entirety and dismiss the Plaintiff's Amended Complaint with prejudice.

**II.   FACTUAL BACKGROUND & PROCEDURAL HISTORY**

In accordance with the standard of review applicable to a motion to dismiss, the following facts are derived from the Plaintiff's First Amended Complaint and viewed in a light most favorable to the Plaintiff.

The Plaintiff, Cynthia Little ("Plaintiff"), is an adult female who began

working for the Defendant, Chambersburg Hospital ("Defendant"), in August of 2008. (Doc. 8, ¶¶ 2, 17). The Defendant Hospital is an acute, not-for-profit hospital existing and operating under the laws of the Commonwealth of Pennsylvania located in Chambersburg, Pennsylvania. (*Id.* ¶ 3). The Defendant maintains a sufficient number of employees to satisfy the jurisdictional and statutory requirements of Title VII of the Civil Rights Act ("Title VII"), the Age Discrimination and Employment Act ("the ADEA"), and the Pennsylvania Human Relations Act ("the PHRA"). (*Id.* ¶¶ 5-7).

Plaintiff commenced employment with the Defendant in August of 2008, when she was placed in the Defendant's newly-hired nurse orientation program for the Defendant's operating room. (*Id.* ¶ 17). On October 9, 2009, Greg Salazar, a surgical technician in the Defendant's employ, called Plaintiff an "old lady." (*Id.* ¶ 30). In November 2009, the Defendant "denied Plaintiff an employment opportunity by complaining that he wanted a more experienced circulator in his [operating] room." (*Id.* ¶ 31). At some point thereafter, "Lori Andrews advised [Plaintiff] that Dr. Klinko preferred the younger nurses, and because Plaintiff was older, she did not 'go along' with his behavior like the younger nurses did." (*Id.* ¶ 33).

In December of 2009, Plaintiff witnessed Dr. Tajkarimi displaying posters

mocking a West African male employee in the Defendant's computer room. (*Id.* ¶ 19). On December 3, 2009, in Plaintiff's presence, Dr. Tajkarimi asked a surgical technician, Courtney Soult, whether she had ever had sexual intercourse with another woman. (*Id.* ¶ 20). Plaintiff complained about the incident. (*Id.* ¶ 21). Plaintiff was, at some point thereafter, placed in a "bogus" performance improvement plan and switched to day shift. (*Id.*). Plaintiff was also demoted, although she does not state to what position, her pay was reduced, and she was "forced to work with a perceptor" and work variable hours. (*Id.* ¶¶ 22, 23).

On January 27, 2010, Plaintiff overheard Drs. Tajkarimi and Klinko ask a different female perceptor whether she had sexual intercourse the preceding evening. (*Id.* ¶ 24). Dr. Tajkarimi began to comment further, "but then stopped and said that he would continue to comment, but that he 'was reported to the union by that little jerkoff Cindy Little.'" (*Id.* ¶ 25). Dr. Tajkarimi asked Plaintiff why she had reported him, and then commented to Dr. Klinko that he did not want Plaintiff in his operating room. (*Id.* ¶¶ 26-27). Plaintiff reported this incident to the operating room manager, who took no responsive action. (*Id.* ¶ 27). As a result of these four incidents, Plaintiff "had no choice but to quit her employment with Defendant on February 24, 2010 because there was no improvement in the working condition." (*Id.* ¶ 36).

Prior to commencement of this action, the Plaintiff filed a timely written charge of discrimination with the Philadelphia, Pennsylvania, office of the Equal Employment Opportunity Commission ("the EEOC") alleging violations of Title VII, the ADEA, and the PHRA, and with the Pennsylvania Human Relations Commission. (*Id.* ¶ 14). The EEOC issued a Notice of Right to Sue to the Plaintiff on June 30, 2011, and Plaintiff filed a timely initial Complaint in this Court on September 29, 2011. (Doc. 1). On December 27, 2011, the Plaintiff filed her First Amended Complaint. (Doc. 8). The Defendant filed the instant Motion to Dismiss on January 10, 2012, and on January 24, 2012, filed a brief in support of said Motion. (Docs. 13, 14). Plaintiff filed an opposition brief on February 10, 2012, and the Defendant filed a brief in response on February 24, 2012. (Docs. 19, 20). Accordingly, the instant Motion is fully briefed and ripe for review.

### III.  STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In resolving a motion to dismiss pursuant to

Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that "raise a right to relief above the speculative level . . . ." *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Accordingly, to satisfy the plausibility standard, the complaint must indicate

that defendant's liability is more than a "sheer possibility." *Iqbal*, 129 S. Ct. at 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later expounded upon and formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a Rule 12(b)(6) motion to dismiss. *Iqbal*, 129 S. Ct. at 1950. Next, the district court must identify "the 'nub' of the . . . complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.* Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 556-57). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## IV. DISCUSSION

The Plaintiff has lodged three counts of employment discrimination against the Defendant, charging the hospital with Title VII violations in Count I, ADEA violations in Count II, and PHRA violations in Count III. We address each of the Plaintiff's arguments in turn.

### A. Title VII Claims

Title VII of the Civil Rights Act of 1964 prohibits an employer from "discriminating against any individual with respect to his or her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *See Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293 (3d Cir. 1999). Title VII recognizes both "hostile work environment" and "retaliation" causes of action. *Id.* Plaintiff has brought claims under both of these theories. We find that both claims suffer from substantially the same flaw: that the Plaintiff has failed to allege discrimination based on membership in a class protected by Title VII.

In order to sufficiently state a claim for a hostile work environment pursuant to Title VII, an employee must plead facts establishing the following elements: "(1) the employee suffers intentional discrimination because of her sex, [race, color, religion, or national origin,], (2) the discrimination is pervasive and regular,

(3) the discrimination detrimentally affects the plaintiff, (4) the discrimination would detrimentally affect a reasonable person . . . in that [same] position, and (5) the existence of respondeat superior liability." *Kunin*, 175 F.3d at 293. The standards for judging whether a work environment is hostile for purposes of Title VII are constructed so as to accommodate reasonable and expected day-to-day interactions between members of the opposite sex, and between coworkers in general. As the Supreme Court has long held, "[s]imple teasing, offhand comments, and isolated incidents, unless extremely serious, will not amount to discriminatory" conduct warranting relief under Title VII's hostile work environment prong. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

     The Defendant contends that Plaintiff has failed to demonstrate that she is a member of a class protected by Title VII and, further, that she has failed to plead that the alleged comments rose to a level beyond simple teasing and offhand comments. We agree. Plaintiff cites four incidents as the basis for her entire claim: that Dr. Tajkarimi displayed a racially offensive picture of another employee, which Plaintiff witnessed; that Dr. Tajkarimi asked another female employee, in Plaintiff's presence, whether "she ever had sex with another woman;" that Dr. Klinko, in Plaintiff's presence, asked a female employee "if she had sex the night

before;" and that Greg Salazar, a surgical technician, called Plaintiff an "old lady." (Doc. 8, ¶¶ 19, 20, 24-27, 30). Each one of these claim's fails to meet the first element of the hostile work environment test: that the employee suffered discrimination because of her race, national origin, sex, color, or religion. *See* 42 U.S.C. § 2000e-2(a)(1). Nowhere in Plaintiff's Complaint does she aver, or even imply, that she personally was discriminated against due to her membership in one of Title VII's protected classes. Thus, Plaintiff has plainly failed to meet the first, and principal, element of the hostile work environment test.

Further, Plaintiff has failed to plead that the alleged discrimination was "pervasive" and "regular." As stated above, "[s]imple teasing, offhand comments, and isolated incidents" are insufficient conduct to support a Title VII's claim. *See Faragher*, 524 U.S. at 788. As the Plaintiff herself notes, in making this determination, we are directed to consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Flick v. Aurora Co.*, 2004 U.S. Dist. LEXIS 1171, *10 (E.D. Pa. Jan. 13, 2004) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

We thus consider whether the alleged conduct indeed was frequent, severe, threatening, and interfered with Plaintiff's work performance. In considering each

of these factors, it is clear that Plaintiff's claim of a hostile work environment fails. With respect to the frequency of the conduct, we note that the Defendant's alleged actions were apparently infrequent, with only four incidents occurring over a four- or five-month period. (*Id.* ¶¶ 19-20, 24-27, 30). While the Plaintiff contends that she was subjected to "offensive" banter and language "daily" and on a "constant basis," the facts alleged simply do not support this conclusion. The deferential standard of review applicable to a motion to dismiss does not go so far as to require this Court to accept unsupported inferences drawn by the Plaintiff. *Cal. Pub. Emps. Retirement Sys. v. Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) ("[W]e need not credit a complaint's 'bald assertions' or 'legal conclusions.'") (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Accordingly, we are not required to—and indeed, decline to—accept as true Plaintiff's substantial conclusory leap from four isolated incidents (Doc. 8, ¶¶ 19, 20, 24-27), three of which were directed at other employees, to Plaintiff herself being "subjected to sexually charged language and banter on a *constant* basis." (*Id.* ¶ 33) (emphasis added).

Likewise, we cannot conclude that the conduct was severe; indeed, only one incident directly concerned the Plaintiff, and while we certainly do not commend referring to ones' colleagues as "old lady," we likewise cannot conclude that one

reference, in and of itself, is "severe." The Plaintiff does not plead that any humiliating or physically threatening statements were made; indeed, we again emphasize that the only three statements that relate to classes protected by Title VII were not directed at Plaintiff, but toward other employees. While we certainly do not condone this type of behavior, in the work place or elsewhere, we nonetheless find that it does not rise to the level contemplated by Title VII's hostile work environment standard. Accordingly, we find that the Plaintiff has altogether failed to state a claim for relief under the hostile work environment theory.

Plaintiff's retaliation theory also fails, and for the same reason. We again stress that Title VII protects individuals who were discriminated against because of their race, national origin, sex, color, or religion. *See* 42 U.S.C. § 2000e-2(a)(1). As stated above, of the four alleged instances of discrimination, the only allegation which involves a single comment directed at the Plaintiff related to her "old" age, a category not protected by Title VII. Accordingly, the Defendant's Motion with respect to Count I is granted and Plaintiff's claims under Title VII of the Civil Rights Act are dismissed.

### B. ADEA Claims

Plaintiff also raises claims under the ADEA, contending that the Defendant

denied her an employment opportunity due to her age. (Doc. 8, ¶¶ 30-32). Plaintiff's ADEA claims are so brief as to allow us to quote them in full: Plaintiff contends that "Greg Salazar, a Surgical Technician, called Plaintiff an 'old lady,'" that "Dr. Klinko denied Plaintiff an employment opportunity by complaining that he wanted a more experienced circulator in his room;" and that "Plaintiff learned that she was in fact denied the position for discriminatory reasons when Lori Andrews advised her that Dr. Klinko preferred the younger nurses, and because Plaintiff was older, she did not 'go along' with his behavior like the younger nurses did." (*Id.*).

In order to state a viable claim for age discrimination, the Plaintiff must plead that she: "(1) was a member of the protected class, i.e., was over 40, (2) was qualified for the position, (3) suffered an adverse employment decision, and (4) ultimately was replaced by a person sufficiently younger to permit an inference of age discrimination." *Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 300-01 (3d Cir. 2004). As the Defendant points out, the fourth element can be satisfied by evidence or allegations that the employer hired a younger employee to replace the plaintiff or that younger employees were favored by the employer in a manner giving rise to an inference of discrimination. *See Palma v. Volunteers of Am.*, 2006 U.S. Dist. LEXIS 5176, *9-10 (E.D. Pa. Feb. 10, 2006).

With respect to the first element, membership in the protected class, Plaintiff pleads that by virtue of her age, she is an appropriate ADEA plaintiff. (Doc. 8, ¶ 43). Even assuming this is true, Plaintiff has failed to plead facts establishing the remaining elements of the claim.

The burden of proving that one is qualified for a position is "not onerous." *See Palma*, 2006 U.S. Dist. LEXIS 5176, at *9 (quoting *Tex. Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Despite this unexacting burden, however, Plaintiff has entirely failed to plead a single fact with respect to her qualifications or those qualifications required for the "opportunity" that she was allegedly denied. Common sense and sound logic would lead this Court to the conclusion that Plaintiff's education and experience are facts indisputably within her knowledge, yet her Amended Complaint is devoid of any such factual background. Accordingly, Plaintiff has altogether failed to plead this element of an ADEA action.

Similarly, Plaintiff has failed to plead facts to support the third element of the test, that she suffered an adverse employment action. *See Monaco*, 359 F.3d at 300. In support of this element, Plaintiff contends that she was "denied . . . an employment opportunity" because of her age. (Doc. 8, ¶ 31). But it is impossible to determine what this was, since Plaintiff does not expound at all upon what

13

opportunity was denied to her. She does not offer facts with respect to an available opportunity, the nature of said opportunity, and whether or not she applied for or was otherwise denied a position. As we stated previously with respect to Plaintiff's Title VII claim, while the *Iqbal* and *Twombly* progeny grants plaintiffs leeway with respect to pleading requirements, this deferential standard of review does not require this Court to accept unsupported inferences drawn by the Plaintiff. *See Cal. Pub. Emps. Retirement Sys.*, 394 F.3d at 143 (quoting *Morse*, 132 F.3d at 906). Plaintiff asserts that she was "denied . . . an employment opportunity," but nothing more. Thus, Plaintiff has failed to establish the third element of her claim.

    Plaintiff's allegations with respect to the final element of her claim are deficient for much the same reason as the last. Plaintiff contends that someone named Lori Andrews advised her that the doctors prefer younger nurses. Even accepting this statement as true, and finding that Lori Andrews did in fact make this statement, the Plaintiff has failed to plead any facts otherwise supporting this conclusion. Plaintiff could have satisfied this element to this Court by pleading, for example, that management chose younger nurses over her on one or more occasions or otherwise made statements or took actions which indicated a preference for younger employees. Instead, Plaintiff pled only a vague assertion

that she was "denied . . . an employment opportunity" because someone told her that a single doctor "preferred younger nurses." (Doc. 8, ¶¶ 31-32). We cannot, without more, assume the truth of this unsupported conclusion which, in essence, is merely a recitation of an element of the claim. *See Morse*, 132 F.3d at 906. Accordingly, we find that Plaintiff has failed to plead the fourth and final element of her ADEA claim.

### C.     PHRA Claims

Plaintiff's third and final count charges violation of the PHRA. As the Defendant points out, and Plaintiff apparently concedes, "Pennsylvania courts assess PHRA [claims] in accord with [their] federal counterparts." *Burgess-Walls v. Brown*, 2011 U.S. Dist. LEXIS 94087, *7 (E.D. Pa. Aug. 22, 2011) (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)); *Goosby v. Johnson & Johnson Med. Inc.*, 228 F.3d 313, 317 n.3 (3d Cir. 2000)). Accordingly, because we have found that Plaintiff has failed to state a claim under both Title VII and the ADEA, we likewise must conclude that Plaintiff has failed to state a viable claim for violation of the PHRA.[1]

---

[1] Having found that Plaintiff's entire Amended Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), we do not address the Defendant's arguments with respect to damages.

## V. CONCLUSION

For all of the reasons articulated therein, we will dismiss the Plaintiff's Amended Complaint in its entirety. The Amended Complaint is composed almost entirely of bald assertions and legal conclusions, which we need not presume true in resolving the Defendant's Rule 12(b)(6) Motion. *See Cal. Pub. Emps. Retirement Sys.*, 394 F.3d at 143 (quoting *Morse*, 132 F.3d at 906). Accordingly, we find that Plaintiff has failed to state facts to support her claims under Title VII of the Civil Rights Act, the Age Discrimination and Employment Act, and the Pennsylvania Human Relations Act, and thus will dismiss the Amended Complaint in its entirety. An appropriate Order shall issue.